## The Inhabitants of Worcester *versus* The Inhabitants of Milford.

Under *St.* 1834, *c.* 150, requiring the town in which a pauper lunatic resided at the time of his commitment to the State Lunatic Hospital, to pay the expense of supporting him while there, and giving to such town a remedy over against the town in which the lunatic has a legal settlement, notice of the expense incurred, given by the former town to the latter within three months after the hospital had demanded payment, was *held* to be seasonable notice to render the latter town liable to the former. [See Revised Stat. *c.* 48.]
But whether any notice was necessarry, *quære.*

Assumpsit for the recovery of $ 97·27, paid by the plaintiffs to the trustees of the State Lunatic Hospital for the support of Russell Cheney, during his confinement in the hospital.

Upon a case stated it appeared, that Cheney resided in Worcester on the 25th of January, 1834, when, upon application to the judge of probate, he was committed to the hospital, under *St.* 1833, *c.* 95, as a lunatic dangerous to be at large, and was there kept and restrained until the 1st of September, 1834, when he was discharged.

Cheney, while confined in the hospital, was a pauper standing in need of immediate relief. His legal settlement was in Milford. On the 1st of June, 1834, a part of the expenses of supporting him in the hospital, viz. $52·68, and on the 4th of December, 1834, the residue, viz. $44·59, were charged to the account of the town of Worcester, by the treasurer of the hospital ; who thereafter, on or before the 6th of the same December, demanded in writing, of the selectmen of the town, the payment of these expenses ; and on the 13th the selectmen paid the amount. On the 6th of December the selectmen of Worcester wrote a notice to the overseers of the poor of Milford, which was received on the 10th, stating that the treasurer of the State Lunatic Hospital had presented to such selectmen an account, in which the sum of $97·27 was charged for the support of Russell Cheney ; and requesting such overseers, as his legal settlement was in Milford, to refund to Worcester that amount paid for the benefit of Milford. On the 30th of January, 1835, the overseers of Milford returned an answer, denying that the settlement of Cheney was in Milford, but adding, that if it should prove to be, they did not consider that town liable to pay the account, and that they declined paying the same.

If upon these facts the Court should be of opinion that the action was sustained, the defendants were to be defaulted, and the damages to be assessed by the Court ; otherwise the plaintiffs were to become nonsuit.

The cause was argued in writing.

*Merrick*, for the plaintiffs, referred to *St.* 1833, *c.* 95 : 1832, *c.* 163 ; 1834, *c.* 150 ; 1793, *c.* 59, § 9 ; 1797, *c.* 62 ; 1816, *c.* 28.

*W. S. Hastings,* for the defendants, cited some of the same statutes ; also *East Sudbury* v. *Sudbury,* 12 Pick 1 ; *Boston* v. *Westford,* 12 Pick. 16 ; *St.* 1802, *c.* 22, § 2.

MORTON J. delivered the opinion of the Court. The paupei was committed to the State Lunatic Asylum by virtue of the statute of 1833, *c*. 95. He was there regularly detained from January 25th, 1834, to September 1st, 1834. The expenses of his support during this period were charged to the town of Worcester; and by the statute of 1834, *c*. 150, § 7, they were made liable to pay them, the pauper, at the time of his commitment, being a resident of that town. They accordingly paid the account, and now claim to recover the amount of the town of Milford, in which the pauper had his legal settlement. Whether they can legally establish this claim, is the question for our determination.

The plaintiffs, not having given notice within three months after the expense for the relief and support of the pauper accrued, cannot recover under the general provision of the pauper laws, *St*. 1793, *c*. 59, § 9. Nor can they recover under *St*. 1832, *c*. 163. A part of the expenses was incurred under this statute, and by its provisions was chargeable only to the town where the pauper had a legal settlement. *St*. 1826, *c*. 142; *Wade* v. *Salem*, 7 Pick. 333; *Boston* v. *Westford*, 12 Pick. 16. The town of Worcester was not chargeable while this statute continued in force. But the statute of 1834, *c*. 150, repealed it and made them liable for the expenses which had accrued before, as well as those accruing after it passed. The town of Worcester could not have given notice within three months of the time when the relief for the first part of the time was furnished, because they were strangers to the transaction and had no interest in the matter. And as at the time of the commitment of the pauper no notice to the town of his residence was required, it does not appear, and there is no reason to suppose, that the officers of the plaintiff town had any knowledge of his commitment, or of their liability for his support, prior to the demand of the treasurer of the hospital. As soon as they were called upon, they notified the defendant town, but it was not in season to bring them within the statute of 1793. If this statute is to govern the case, the course of legislation on the subject must operate with great severity, if not injustice, upon the plaintiffs.

They rely upon the seventh section of *St*. 1834, *c*. 150.

This section in the first place provides, that the town in which the pauper resided at the time of his commitment, shall be liable for his relief and support, and gives an action to the treasurer of the corporation, if the town does not pay the expenses incurred, within thirty days after a demand made. It then enacts, that " such town or city shall have the same rights and remedies against all corporations and persons, to recover such expense of supporting and removing any pauper lunatic, as if such expense had been incurred by said town or city, in the ordinary support of such lunatic." The most obvious meaning of this would seem to be, that the town thus liable to the hospital should have power to proceed in the same manner against the pauper's relatives, if he had any able to support him, and if not, against the town where he is legally settled, as if they furnished the relief and support by their own overseers. And yet this clause must necessarily, to some extent, modify the pauper laws. Should a remedy be sought by the town liable to the hospital for the support, could they bring their common law action, or would they be compelled to proceed by complaint, as in the third section is provided ? Be this as it may, it is very clear that the Common Pleas could not fix the weekly allowance thereafter to be paid, for this must depend on the government of the hospital. Nor could they apportion the sum, the amount being uncertain, among the kindred. Nor could they determine with which of his kindred he should reside, nor that he should reside a part of the time with one and a part of the time with another or others.

So if the remedy was against the town in which the lunatic pauper was settled, it would be very clear that the limitation as to the price could not apply, because the town of the settlement would have no power to remove him. *St.* 1821, *c.* 94, § 3. And the plaintiffs' counsel strongly contends, that the provision requiring the notice within three months of the time of furnishing the relief, is superseded, because the reason and utility of it do not exist. The pauper could not be removed any more than if he was confined in the house of correction under sentence, and no measures could be adopted, to assume the payment of the expenses or to affect the amount of them or the treatment and management of the pauper. And as this

clause was intended as a substitute for the fourth section of the <span style="float:right">Worcester<br>*v.*<br>Milford.</span> statute of 1832, *c.* 163, it is assumed, that notice is dispensed with in the one statute as well as the other.    This reasoning is not only plausible, but has great intrinsic force.    And yet we entertain doubts whether it may be relied upon as conclusive. It would seem to us, that if the legislature intended to dispense with notice to towns, and give a certain remedy for the amount paid, without any previous notice or subsequent limitation, other than the general statute limitation, they would have used different and more simple and direct language ; merely providing· that the town reimbursing the hospital should recovel the amount by them paid, of the town where the pauper haa 'iis settlement.    It would, too, be a novel principle for a towr to recover for the support of a pauper, without notice or request of payment.    And yet many of the purposes of notice are taken, awpy ; the giving a seasonable notice is rendered difficult if not impossible ; and if given, useless, or nearly so, to the town receiving it.    Money paid by one town to another for the support of a pauper settled in a third, cannot be recovered of that town. *East Sudbury* v. *Sudbury*, 12 Pick. 1. So, but for the positive enactment of *St.* 1834, *c.* 150, § 7, Worcester could not recover for the money paid to the hospital, against the defendants.    As that statute gives the remedy, so it must be entirely regulated by it.    And our only object should be to ascertain the true meaning of the section in question, and how far it adopts and how far it modifies the statute of 1793. The .atter statute, in requiring notice of the expenses of relief and support to be given, contemplates that the party giving the notice is the party who furnishes the supplies, and that no other person can give the notice or recover for the supplies.    Now in this case, the plaintiff town did not furnish the supplies, nor had in any sense any control over them.    Neither the hospital corporation nor its officers were the agents of the plaintiffs. They did not, therefore, within the meaning of the statute of 1793, " provide for the immediate comfort and relief " of the pauper.    But they are made liable to pay for these supplies, and this by positive statute is made to stand in place of furnishing the supplies, and gives them the same remedy as if they had actually done so.    As this is their first agency in the

support, and perhaps their first knowledge of their liability, it would seem to be reasonable, and to approach as near the literal construction of the two statutes as is practicable, that the notice should have relation to the payment to the hospital, and that a notice at any time within three months after this payment would be sufficient, and an action might be brought at any time within two years from that act.

The notice must be given within three months after expenses *incurred.* When did the town of Worcester *incur* these expenses ? Not before they paid, or undertook, or became liable to pay them. If the agent of the town furnishes the supplies, the town becomes immediately liable, it is in fact their act. If they contract with a person to do it, they are immediately responsible to him for it, and it is the same thing. In this case, although the statute provides, that the expenses shall be charged to the town of the pauper's residence, yet unless notice be given by the treasurer they cannot be said to be legally liable therefor, because such notice is an indispensable prerequisite to the bringing an action. And without it they never can be compelled to pay.

The notice in this case, was given to the defendant town within three months after demand made by the treasurer of the hospital upon the plaintiff town, and the payment of the account, and the Court are of opinion, that if any notice was necessary, this was seasonable and sufficient, according to the fair import of all the statutes taken together.

*Defendants defaulted*